[Huron Circuit Court, November Term, 1895.]

### BRADLEY v. FIKE.

PRIORITY OF MORTGAGE.

F., as the agent of L., purchased property fraudulently, taking the title in his own name, and then gave B. a mortgage, who did not file his mortgage for record till after L. had brought an action to compel F. to convey the property to her. *Held :* B.'s right in the property is superior to L.'s.

KING, J.

This action was brought in the court of common pleas by Mr. Bradley to foreclose a mortgage given to him by the defendant, W. A. Fike, to secure a promissory note of $450.00. Bradley alleges that on the 18th day of July, 1891, he loaned the defendant, W. A. Fike, $450.00, taking his promissory note therefor, payable in one year from its date, and also took from Mr. Fike a mortgage which he on that day executed and delivered to him upon a certain parcel of land described in the petition and being fifty-two and one-half acres, more or less. He also alleges that one Nannie E. Lucas and a man by the name of Funk claims some interest in the premises and he asks for judgment and foreclosure on the mortgage. W. A. Fike was served in this action by publication but did not appear to answer. Nannie E. Lucas, however, did answer, and she sets up in her answer substantially that at the time of the execution and delivery of the mortgage described in the plaintiff's petition, she was the owner of the premises for which the mortgage was given ; then she sets up a state of facts by which she seeks to show that the defendant, Fike, at the time of the execution of the mortgage held the naked legal title in these premises in trust for her.

The evidence offered upon the trial of the case, discloses as to the facts which are not disputed, that sometime in April or May of 1891, Mrs. Lucas was the owner of hotel property at Oak Harbor, in Ottawa county, and her husband resided with her and in the occupation of that property ; that about that time they came into communication with the defendant, Fike, and through him arranged a trade for the hotel property, or of the hotel property for certain lands which he represented to them he could trade for this hotel property, the land belonging to a man named White, who resided at New London where Mr. Fike then resided. There was some discussion in these preliminary talks about the amount of land to be conveyed and Mr. Lucas, acting for his wife on one occasion, went and visited this land and found it as a farm arranged on opposite sides of the road in two parcels substantially of about fifty-two acres each.

On the consummation of the trade, Mr. Fike went to Oak Harbor with the deed of the fifty-two acres, or one piece of this land and exhibited it to Mrs. Lucas, or to her husband, or to both of them and then said to them that Mr. White would not give a deed for any more land or for any other part of this farm than the part contained in this deed. There was some discussion between them as to whether it was enough or,

not, but it resulted in her acceptance of the deed for one piece of this land and the delivering over at that time or before, of her deed to Mr. White for the hotel. Her deed went on record soon after at th recorder's office in this county. About the same time also, appeared of record the deed from Mr. White to W. A. Fike for the other piece of the land, which constituted this one farm lying near Fitchville in this county. That occurred some day in May.

On the 18th of July, as shown by the petition and by the evidence. Mr. Fike borrowed from the plaintiff, Bradley, $450.00, and executed a mortgage. On the 24th of July, Nannie E. Lucas, having learned some time before that (and the time she learned it is not shown by the evidence exactly), but having learned that this man Fike had taken a deed and had had it recorded for another piece of land from Mr. White, she brought an action to have it decreed and declared by the court that Mr. Fike held the title to that particular piece of land in trust for her, and on the 25th day of July, Mr. Fike was served with summons in that case, and on the 11th day of August of the same year, Mr. Bradley filed his mortgage taken by him on the 18th of July, for record in the recorder's office of this county.

These are substantially the important facts, as shown by the testimony in the case and upon which the claims of the different parties arose. It is claimed here, on account of the provision of the statute relating to the recording of mortgages, that Mr. Bradley, the plaintiff, did not acquire as against any person, except Fike, any interest in this property until his mortgage from Mr. Fike was delivered for record. That before the delivery was made, Mrs. Lucas having commenced an action setting forth her rights in this property to be that of the legal and equitable owner and setting forth that Mr. Fike had no interest therein except the legal title of it, and by the filing of such an action both under the common law and under the statutes of the state, she acquired such rights in the property as of the date of her action as were superior to the unrecorded mortgage of Mr. Bradley. These are substantially the points urged by the counsel for the defendant. There are some other facts that may be deemed material for the proper disposition of this case and which are somewhat in dispute.

Mrs. Lucas claims, as shown by the testimony, that in the making of this trade of the hotel property for the farm, that the defendant, Fike, acted as the agent of Mr. White, the owner of the farm, and not as her agent. But the evidence discloses that he was acting as the agent for both of these parties. The evidence discloses that both of them paid him; Mr. White paid him $100 and Mrs. Lucas or her husband paid him $75 for the part which he played in the transaction. They undoubtedly could both recognize that he was acting as their agent to some extent. But the evidence goes a little further than that in disclosing his agency. It is very pertinent that when this action was brought to declare this trust, Mrs. Lucas set forth as the state of her title and of her rights in these premises, and by which she now claims under the statute relating to *lis pendens*, that Mr. Bradley had notice, that, " on or about the 20th of April, 1891, she was the owner of valuable hotel property " (omitting certain words which are not necessary for the statement which I desire to take out of this petition ), and " on that day entered into an arrangement and agreement with the defendant, W. A. Fike, whereby for a valuable consideration the defendant promised and agreed to and with the plaintiff that he, the defendant, would negotiate for the plaintiff a

transfer and exchange of said hotel property for certain real estate then owned by one Albert White, situate in the township of Fitchville, Huron county, Ohio, or so much of said real estate as could be obtained in said exchange, and to use his, the defendant's, best skill and judgment in obtaining from said White as much of said Fitchville real estate and a transfer of the same for said hotel property on terms as favorable to the plaintiff as possible.

" On or about the 25th day of May, 1891, the defendant (Fike), did negotiate an exchange of said hotel property for all said real estate of said White in said Fitchville township, receiving from said White as the purchase price and consideration for the deed of this plaintiff conveying to said White said hotel property."

Then she goes on and more particularly describes it, and says that at the said time and on said occasion there was received from Mr. White two deeds, one of which was made and executed by Mr. White and granted to her one of these pieces of land, and the other made by him and granted to Mr. Fike the other said piece of land.

Then she charges that he put that deed on record and that he came and falsely represented to her that in making this trade he could secure from Mr. White but the one piece of land, and she, believing that he could not secure from Mr. White any more of the land, in accordance with the agreement that she had made with him, that he was to get as much of the Fitchville land as he could, she accepted the deed for the fifty odd acres and delivered over her deed.

From these facts she says a trust arose, as it undoubtedly did, if these facts were true, and as the court found when it came to try the case, that these facts were substantially true, that a trust did arise in favor of Mrs. Lucas and that she was the equitable owner of this land and entitled to have it conveyed to her and a decree was made to that effect.

But that places the case of Mrs. Lucas entirely upon the ground that Mr. Fike was her agent in this whole transaction, and because he was her agent, she had a right to insist on his turning over to her the proceeds of the transaction as he had procured it.

If Mr. Fike was purely and simply Mr. White's agent, it follows just as certainly as effect follows cause, that Mrs. Lucas did not have any trust estate there, and she couldn't have procured that deed to be set aside and a conveyance made to her; for, if Mr. Fike was acting for Mr. White, then it might as well have been Mr. White acting instead of Mr. Fike. All there was of the charge of a false statement to her, was the simple statement by Mr. Fike that he couldn't get any more land; that Mr. White would convey no more land, and if Mr. White had said that to her in person and she had accepted fifty acres, she would have been bound by her bargain, even if she had expected she might get more.

But Mr. Fike was her agent, and as such he was charged with a strict accountability in all of his acts and when he traded, he traded for 104 acres of land and she was entitled to that, therefore, the court decreed it to her.

We think that the evidence discloses that that was substantially the bargain, although it discloses that he was also the agent of Mr. White, and as the agent of Mr. White, traded off this farm, and that Mr. White, in what he did, intended to convey this land to Mrs. Lucas.

Now, if that is the situation of the case, and Mr. Fike was her agent and took the title of this property in himself when he ought to have had it made to her, and while the title so remained in him, he executed a mortgage

Bradley v. Fike.

upon it and secured a *bona fide* loan of money made to him on the strength of his apparent title, it occurs to the court that it does not make very much difference about the recording act; that Mr. Bradley's equity, which the supreme court have said—created by this mortgage—was good between the parties, if not equally good as to Mrs. Lucas, is better than her claim which simply rested in her mind at that time. In other words, if, while this deed ought to have been made to her by her agent at the time of the transaction, he fraudulently kept it or took a deed of a part to himself, and sold it or conveyed it to some one else as security for money loaned, that person would have a right to enforce his mortgage against Mrs. Lucas, whether it was recorded or not. We can come to no other conclusion than that—we do not care to elaborate upon it. A great many cases have been cited to us under the recording statutes and if it were a question of the effect of this recording act, we should be compelled to hold that the equitable interest of Mr. Bradley in this property as evidenced by this unrecorded mortgage, was of such a nature as would make it superior to the claim which the defendant then held, and that whenever he should file that of record, he would ripen that equitable interest into a legal interest in this property and it would be good against her; that her interest in the property was not one, in existence either at the date of the execution of this mortgage, or of its being left for record. Her claim set forth in her petition is a claim that she had employed this man as an agent; that she had directed him to do certain things and that he had failed to do this honestly, but had done something else, and she asks to have his acts in that respect set aside and the title to this property decreed to be in her.

We do not believe that the filing of her petition was the creation of such a right in her in this property as would, under the decisions of the courts in this state, make it superior to an unrecorded mortgage, given as this was. There are a great many of those decisions, and we find substantially in all of them, so far as we have been able to examine them, that where the courts have given an opinion, they state substantially that the object of the statute is to render an unrecorded mortgage ineffectual, or, in the language of the statute, " of no effect as to persons who may acquire some interest or lien in or upon premises after the date of its execution." I can find no decision of the supreme court and none has been cited to us that I know of where any language contrary to that has been used by the courts. And we would not feel that we could ignore all that the courts have said upon that subject, although it might be correctly argued that it was unnecessary for the judge, in delivering his opinion, to use that precise language; but very able judges in this state have used that language, and even stronger than I have stated it I see no reason why the statute could not fairly be construed and held to have that meaning and effect. The courts having held that these mortgages were good as between parties, what object or purpose has the recording statute except to provide that a mortgage not recorded shall be held not to have any effect as to parties or persons who may acquire some interest against it, subsequent to the making of the mortgage.

For these reasons, we think the plaintiff should have a decree foreclosing this mortgage for the amount that is now due upon it, whatever that may be, and an order of sale.

The order will remand the case to the court of common pleas for execution.